UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH L. ENNIS,<br><br>  Plaintiff,<br><br>  v.<br><br>CALIFORNIA STATE PRISON – SACRAMENTO, et al.,<br><br>  Defendants. | No. 2:21-cv-0467 DB P<br><br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants failed to provide him adequate medical care in violation of his Eighth Amendment right. Presently before the court is plaintiff's motion to proceed in forma pauperis (ECF No. 2) and his complaint for screening (ECF No. 1). For the reasons set forth below, the court will give plaintiff the option to proceed with the complaint as screened or file an amended complaint.

**IN FORMA PAUPERIS**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). (ECF No. 2.) Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct

1

the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

**SCREENING**

**I.     Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell AtlanticCorp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the

allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Here, the defendants must act under color of federal law. Bivens, 403 U.S. at 389. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II.    Allegations in the Complaint**

The events giving rise to the claim occurred while plaintiff was incarcerated at California State Prison, Sacramento (CSP-SAC). (ECF No. 1 at 1.) Plaintiff has identified the following defendants: (1) CSP-SAC; (2) Steve Molina, registered nurse (RN) at CSP-SAC; (3) Aubert, correctional officer at CSP-SAC; (4) Jian Ma, medical doctor at CSP-SAC; (5) A. Herrera,

////

3

correctional officer at CSP-SAC; and (6) Pehhe, licensed vocational nurse (LVN) at CSP-SAC. (Id. at 1-3.)

Plaintiff states he arrived at CSP-SAC in October 2010. (Id. at 4.) Plaintiff dislocated his left knee while playing basketball on May 27, 2017. Inmates assisted plaintiff to the medical clinic. At the clinic RN Tyler examined plaintiff's knee, ankle, and foot. (Id. at 5.) Tyler phoned the Correctional Treatment Center (CTC) and spoke with RN Molina. While waiting for Molina to arrive, Tyler gave plaintiff crutches.

After plaintiff explained his injuries to Molina, Molina stated, "CDC should do away with sports for you inmates." (Id. at 6.) Molina then asked plaintiff if he was "trying to just get pain medication." Molina called Dr. Ma at CTC to tell him about plaintiff's injury. Plaintiff believes Molina "lessoned the seriousness and degree of severity of his pain and injuries by stating 'he's only in a little bit of pain and has little swelling to his left knee.'" (Id. at 6-7.) Molina stated Dr. Ma instructed that plaintiff be sent back to his cell. (Id. at 7.)

Plaintiff interjected to inform them that he was assigned to a top bunk and would not be able to climb up due to his injury. Molina stated, "it's a non-urgent knee sprain dude!" and indicated plaintiff would be scheduled for a doctor's appointment on June 1, 2017.

Plaintiff requested a chrono allowing him to miss work assignment. (Id. at 8.) RN John gave plaintiff a chrono excusing him from work, but plaintiff was not given a lower bunk chrono. Molina instructed plaintiff to walk back to his assigned cell. Because he had not received a lower bunk chrono, plaintiff had to sleep on the floor causing his injuries and pain to become worse.

The following day, May 28, 2017, an officer observed plaintiff's injuries and difficulty walking and called the C-Facility medical clinic. (Id. at 9.) When plaintiff arrived at the clinic, Molina observed plaintiff's knee and immediately phoned the CTC. He told plaintiff he was being sent to San Joaquin Hospital.

At the Hospital plaintiff's knee was X-rayed. The X-ray technician told plaintiff the X-ray did not show any broken bones, but it would be difficult to determine of he had other injuries without doing magnetic resonance imaging (MRI). (Id. at 10.) The X-ray technician told plaintiff CSP-SAC medical staff only approved an X-ray. Plaintiff was sent back to CSP-SAC without

any further treatment. He alleges Molina only approved an X-ray despite knowing that plaintiff's injuries were serious, thus denying adequate care.

On May 31, 2017, plaintiff was called for a medical appointment. (Id. at 10-11.) Plaintiff asked for a wheelchair because he was in serious pain attempting to walk with crutches. (Id. at 11.) Defendant Aubert said he would not send a wheelchair and plaintiff had "better crawl if he has to." Plaintiff states he was unable to get to the clinic because there is a steep down hill incline with loose gravel, and he could not traverse it safely with his crutches. He indicates that he was not able to get make it to his medical appointment.

On June 1, 2017, plaintiff was sent to San Joaquin Hosptial for diagnosis of his knee by Dr. Tabraee. (Id. at 12.) Dr. Tabraee diagnosed plaintiff with a multi-ligament knee injury and prescribed a "nonweight bearing telescoping knee brace." (Id. at 12-13.) Plaintiff had surgery on June 26, 2017. (Id. at 15.)

Dr. Ma did not provide plaintiff with the prescribed knee brace or any other brace. (Id. at 13.) Additionaly, Aubert refused to provide a wheelchair to allow plaintiff to attend his medical appointments on both June 14 and June 23, 2017. (Id. at 13-14.)   LVN Pehhe was notified that plaintiff could not make it to the appointment without a wheelchair. (Id. at 14.) However, Pehhe refused to send plaintiff a wheelchair. Officer Herrera also denied plaintiff a wheelchair. Pehhe asked plaintiff to sign a refusal of examination or treatment form on June 23, 2017.

On July 7, 2017, defendant Aubert again refused to provide plaintiff with a wheelchair. (Id. at 15.) Plaintiff was sent to walk to his medical appointment to have his staples removed, walking on crutches without a brace in high temperatures.[1] (Id.) He became dizzy and light-headed due to the pain before falling down unconscious. Plaintiff woke up in the medical emergency rover and was returned to his assigned cell in a wheelchair.

Plaintiff learned from Dr. Moghaddam that Dr. Ma cancelled or withdrew plaintiff's EMG nerve conduction appointment for unknown reasons two days prior to plaintiff's surgery. (Id. at 16.) Dr. Ma told plaintiff that on the day plaintiff was injured Ma instructed Molina to send

---

[1] Plaintiff indicates that he is prohibited from going outside when the temperature is 90 degrees or higher because of his prescribed medication. (Id. at 15.)

plaintiff to the hospital. Ma did not know why plaintiff was not immediately sent to the hospital. Plaintiff was issued a lower bunk chrono six months after he injured his knee.

### III.     Does Plaintiff State a § 1983 Claim?

#### A.  Legal Standards – Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

Where a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prisoner officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny,

delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330,332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**B. Analysis**

Plaintiff has alleged Molina prevented plaintiff from receiving necessary medical treatment on the day of his injury by downplaying the severity of his injury, failing to send him to the hospital right away, and only ordering X-rays when he went to the hospital. (ECF No. 1 at 6-10.) He claims Aubert refused to allow plaintiff to use a wheelchair to get to his medical appointments on three separate occasions. (Id. at 11-15.) Herrera and Pehhe similarly refused to allow plaintiff to use a wheelchair to access his medical appointments. (Id. at 14.) Plaintiff has alleged Dr. Ma refused to provide plaintiff with a brace prescribed by a specialist and cancelled a medical appointment two days before plaintiff's surgery. (Id. at 13, 16.) Plaintiff has stated facts showing the defendants interfered with his ability to receive timely medical treatment for his

////

injuries. The court finds these allegations sufficient to state a potentially cognizable Eighth Amendment claim against these defendants.

Plaintiff has also identified CSP-SAC as a defendant. (ECF No. 1 at 1.) However, the Eleventh Amendment bars suit against a state or state agency absent a valid waiver or abrogation of its sovereign immunity. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 10 (1890). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court . . . ." Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999) (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)); see also Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009). This immunity applies regardless of whether a state or state agency is sued for damages or injunctive relief, Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam), and regardless of whether the plaintiff's claim arises under federal or state law, Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984). Because CSP-SAC is part of the California Departmnet of Corrections and Rehabilitation, which is a state agency, it is subject to dismissal based on the Eleventh Amendment.

**IV.     Amending the Complaint**

As stated above, the complaint states a cognizable Eighth Amendment claim against defendants Molina, Aubert, Herrera, Pehhe, and Ma. However, the complaint fails to state a claim against CSP-SAC. Accordingly, plaintiff will be given the option to proceed with the complaint as screened or to file an amended complaint.

Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant. The charging allegations must be set forth in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See Fed. R. Civ. P. 8(a).

////

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, all prior pleadings are superseded. Any amended complaint should contain all of the allegations related to his claim in this action. If plaintiff wishes to pursue his claims against the defendant, they must be set forth in the amended complaint.

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

////

////

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff has stated a potentially cognizable Eighth Amendment claim against defendants Molina, Aubert, Herrera, Pehhe, and Ma. The complaint does not contain any additional claims.

4. Plaintiff has the option to proceed immediately on his Eighth Amendment claim as set forth in Section III above, or to amend the complaint.

5. Within twenty (20) days of service of this order, plaintiff shall complete and return the attached form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file a second amended complaint.

6. Failure to comply with this order will result in a recommendation that this action be dismissed.

Dated: August 12, 2021

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB/DB Prisoner Inbox/Civil Rights/S/enni0467.scrn

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH L. ENNIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA STATE PRISON – SACRAMENTO, et al.,<br><br>　　　　　Defendants. | No.  2:21-cv-0467 DB P<br><br>PLAINTIFF'S NOTICE ON HOW TO PROCEED |

Check one:

\_\_\_\_\_　　Plaintiff wants to proceed immediately on his Eighth Amendment claim against defendants Molina, Aubert, Herrera, Pehhe, and Ma.  Plaintiff understands that by going forward without amending the complaint he is voluntarily dismissing all other claims and defendants.

\_\_\_\_\_　　Plaintiff wants to amend the complaint.

DATED:_____

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Joseph L. Ennis
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Plaintiff pro se